UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **WILLIAM WADDELL JONES,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | |
| } | **CASE NO. 1:13-cv-1127-SLB** |
| **CAROLYN W. COLVIN, Acting** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

William Waddell Jones ("plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying his application for a period of disability and disability insurance benefits ["DIB"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

### I. PROCEDURAL HISTORY

Plaintiff initially filed an application for a period of disability and DIB on August 25, 2010, alleging a disability onset date of June 9, 2009. (R. 146-48.) This application was denied on December 13, 2010 by the Social Security Administration ["SSA"] (R. 68.)[1] Subsequently, plaintiff requested a hearing before an Administrative Law Judge

---

[1] Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ["R.___"].

["ALJ"], which was held on August 8, 2012. (R. 78.) During the hearing, the initial alleged onset date of June 9, 2009 was amended to February 22, 2011. (R. 47, 55.) The ALJ found that plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities. (R. 23.) In light of this finding, the ALJ denied plaintiff's request for a period of disability and DIB on August 13, 2012. (R. 24.)

On September 28, 2012, plaintiff requested the Appeals Council to review the ALJ's decision. (R. 7.) After considering his request for review, the Appeals Council "found no reason under [its] rules to review the Administrative Law Judge's decision," and on May 24, 2013 denied plaintiff's request for review. (R. 1.) Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. (*Id*.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on June 13, 2013. (Doc. 1.)

## II.  STANDARD OF REVIEW

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that

of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for a period of disability and DIB.[2]

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five

3

*See* 20 C.F.R. § 404.1520(a)(1)-(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the

---

when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

[3] The Regulations define "substantial gainful activity":
>    (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
>    (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
>    (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

 20 C.F.R. § 404.1572.

claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since February 22, 2011, the alleged onset date. (R. 19.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). A claimant must provide "medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. A physical or mental impairment "results from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id*. It is the claimant's responsibility to "provide medical evidence showing . . . impairment(s)

---

[4]Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

and how severe it is during the time [the claimant says he is] disabled." 20 C.F.R. § 404.1512(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984). *See also* SSR 85-28, 1985 WL 56856 (1985). "Step two is a threshold inquiry [that] allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild." *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986). If the Commissioner finds that a claimant does not have a medically determinable impairment or combination of impairments that are severe for at least twelve consecutive months, the Commissioner will find the claimant is "not disabled." 20 C.F.R. § 404.1520(a)(4)(ii).

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had the following medically determinable impairments: left finger deformity status post stabbing, hypertension, and hepatitis C. (R. 19.) At step two, the ALJ concluded that plaintiff's medically determinable impairments or combination of impairments did not significantly limit his ability to perform basic work related activities for twelve consecutive months, and therefore, he did not have a severe impairment or combination of impairments. (R. 20.) Based on this finding, the ALJ determined that plaintiff was not disabled, (R. 23), and therefore, did not proceed to step three.

**B. MR. JONES'S CLAIMS**

**1. Medically Determinable Impairments**

Plaintiff contends that, of the three medically determinable impairments the ALJ identified, the ALJ erred in finding that two impairments were non-severe: left-hand deformity and hepatitis C. (Doc. 8 at 7.) The ALJ appropriately classified the third medically determinable impairment, hypertension, as non-severe, and plaintiff does not contest this finding.[6]

SSR 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929[7]: "First, the adjudicator must consider whether there is an underlying medically

---

[6] Plaintiff "makes no assertion that high blood pressure that is pretty well controlled or usually controlled would be a severe impairment under the regulatory criteria." (Doc. 8 at 13.)

[7] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the

determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 21.)

> If the ALJ finds that the plaintiff's case survives the first step, then
>
>> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

Despite finding medically determinable impairments, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that the claimant has no severe impairment or combination of impairments." (R. 21.) While it is true that the ALJ must consider plaintiff's subjective testimony in determining the

---

subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

severity of his impairments, the ALJ is also required to consider the objective medical evidence. "In evaluating the intensity and persistence of your symptoms, including pain, we will consider *all* of the available evidence . . . ." 20 C.F.R. § 404.1529(a). The ALJ found that, in considering all available evidence, the record "suggest[s] greater sustained capacity than described by the claimant." (R. 23).

The ALJ puts forward three bases for discrediting plaintiff's testimony regarding his medically determinable impairments: his own testimony in the hearing, a physician's report, and medical records. (R. 21-23.) Regarding the left-hand deformity, the ALJ found that plaintiff's testimony regarding his work and activities of daily living was inconsistent with plaintiff's testimony. (R. 23.) Plaintiff testified that he has difficulty lifting, grasping, and holding objects with his left hand. (R. 38.) Plaintiff also testified that, while working, he could carry objects but could not lift or grasp them, (R. 44-46), and that the pain worsened around 2008, (R. 50).

The ALJ noted that plaintiff continued to work for five years after his injury in a heavy exertion job, assisting with pipe fitting and the installation of hot water heaters, among other tasks, (R.22, 34, 46), until June 9, 2009, when plaintiff "was laid off" for reasons other than disability, (R. 150).[8] Undoubtedly, plaintiff's work required some degree of lifting and grasping for plaintiff to adequately assist in pipe fitting and installation assignments. While plaintiff's testimony that his left hand pain began to worsen around 2008, (R. 50), is not inconsistent with his continued work after the injury

---

[8] The injury to plaintiff's non-dominant left hand resulted from a stabbing wound plaintiff received around 2004. (R. 46.)

9

occurred, plaintiff presented no medical evidence that his condition worsened from the time plaintiff received the injury in 2004. Plaintiff also testified that he regularly drives, as long as the drive is not long distance, (R. 22, 52), and rakes leaves and cleans the yard outside his apartment complex, (R. 55). Because driving and yard work, such as raking, require plaintiff to use his left hand, plaintiff's activities of daily living are inconsistent with plaintiff's testimony.

The ALJ heavily relied on medical reports from February 2011 to April 2012, reflecting that plaintiff never complained of pain or difficulty using his left hand during any of seven visits to the health service provider, Quality of Life. (R. 230-58.) Additionally, of the reports that document a physical exam, all state that plaintiff had a normal range of motion in all four extremities. (R. 232, 239, 245, 248, 253, 257.) The ALJ also relied upon the report of Dr. Ammar Aldaher, plaintiff's consulting physician. As plaintiff states in his brief, Dr. Aldaher does report that plaintiff had "left hand pain with decreased range of motion index and little finger DIP and PIP joint to flexion." (Doc. 8 at 10; R. 228.) However, Dr. Aldaher then opines that plaintiff "is able to do work related activities such as . . . lifting, carrying and handling objects." (R. 228.)

Regarding plaintiff's hepatitis C, the ALJ found that plaintiff gave inconsistent testimony. (R. 22.) Plaintiff testified that heptatitis C gave him headaches and made him tired, requiring him to sit down. (R. 44.) He also testified that has to lie down once a day for thirty minutes, (R. 39), and that his symptoms have been present for "about eight or nine months," (R. 44). In a Function Report, plaintiff states that he can walk only half a

block before needing to rest. (R. 168.) The ALJ did not find plaintiff's complaints credible given plaintiff's testimony that he could walk five miles. (R. 22, 39-40.)

The ALJ also considered plaintiff's medical reports from Quality of Life, the only health care provider from whom plaintiff sought treatment for hepatitis C. (R. 38.) Quality of Life diagnosed plaintiff with hepatitis C in June 2011. (R. 240-41.) Despite plaintiff's testimony about pain and fatigue, plaintiff never reported headaches or tiredness to Quality of Life during any of his visits, and the medical reports do not reflect that plaintiff had any symptoms of hepatitis C. (R. 22, 230, 235, 238, 243, 247, 252, 255.)

Substantial evidence supports the ALJ's findings that plaintiff's medically determinable impairments are not severe.

## 2. Mental Impairment

Plaintiff contends the ALJ erred in finding that plaintiff's probable borderline mental retardation or possible mild mental retardation is not a severe impairment. (Doc. 8 at 12.) To begin, the ALJ is incorrect that "no evidence [exists] that would suggest [plaintiff] has borderline intellectual functioning or any form of mental retardation." (R. 20.) The reports of examining psychologist, Dr. Robert Kline, and the state agency non-examining consultant, Dr. Amy Cooper, which state that plaintiff may have probable borderline or possible mild mental retardation, provide at least some evidence that plaintiff suffers from diminished intellectual functioning. (R. 206, 219.) However, to the extent plaintiff may have a mental impairment, the ALJ did not err in finding no severe impairment because substantial evidence exists that plaintiff has the ability to perform

11

basic work activities. "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." SSR 85-28. Basic work activities include: "physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b)(1)-(6).

Even though Dr. Kline opined that plaintiff had a "marked restriction of activities," he also reported that plaintiff's "ability to understand, to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting would probably be adequate if he were physically capable of performing the duties." (R. 206.) Dr. Cooper stated in a report that further testing to determine plaintiff's level of intellectual functioning was not necessary given his extended periods of past work. (R. 219.) These reports undermine plaintiff's claim that he has a severe mental impairment. Additionally, no medical evidence exists suggesting plaintiff's intellectual functioning has worsened since plaintiff was able to perform semiskilled work for several years until 2009. (R. 20.) Plaintiff also regularly drives and testified that he does not have problems getting along with coworkers, which suggest his level of intellectual functioning would not impair his ability to carry out basic work activities. (R. 41, 48).

The ALJ did not err in finding no severe mental impairment.

## IV. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An order affirming the Commissioner's decision will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 15th day of September, 2014.

_____
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE